# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY GUADALUPE RUIZ,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. EDCV 16-2027-KK<br><br><br>MEMORANDUM AND ORDER |

Plaintiff Mary Guadalupe Ruiz ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income Benefits ("SSI"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c). For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

## I.
## **PROCEDURAL HISTORY**

On August 19, 2013, Plaintiff filed applications for DIB and SSI, alleging a disability onset date of June 4, 2013. Administrative Record ("AR") at 154-63.

Plaintiff's applications were denied initially on November 15, 2013, and upon reconsideration on February 27, 2014. Id. at 91-95, 101-05.

On March 24, 2014, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 106. On April 24, 2015, Plaintiff appeared with counsel and testified at a hearing before the assigned ALJ. Id. at 25-48. A vocational expert ("VE") also testified at the hearing. Id. at 44-48. On May 1, 2015, the ALJ issued a decision denying Plaintiff's applications for DIB and SSI. Id. at 10-24.

On June 10, 2015, Plaintiff filed a request to the Agency's Appeals Council to review the ALJ's decision. Id. at 7-9. On July 28, 2016, the Appeals Council denied Plaintiff's request for review. Id. at 1-6.

On September 23, 2016, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1, Compl. This matter is before the Court on the parties' Joint Stipulation ("JS"), filed May 22, 2017. Dkt. 19, JS.

## II.

## **PLAINTIFF'S BACKGROUND**

Plaintiff was born on November 3, 1966, and her alleged disability onset date is June 4, 2013. AR at 154, 161. She was forty-six years old on the alleged disability onset date and forty-eight years old at the time of the hearing before the ALJ. Id. at 48, 154, 161. Plaintiff has a high school education and she has work experience as a cashier. Id. at 198, 213. Plaintiff alleges disability based on rheumatoid arthritis, psoriatic arthritis, diabetes, high blood pressure, and high cholesterol. Id. at 212.

## III.

## **STANDARD FOR EVALUATING DISABILITY**

To qualify for DIB and SSI, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing

the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

1. Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
2. Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.
3. Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[1]
4. Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.
5. Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that

---

[1] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

3

exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

## IV.
## THE ALJ'S DECISION

### A. STEP ONE

At step one, the ALJ found Plaintiff has not engaged "in substantial gainful activity since June 4, 2013, the alleged onset date." AR at 15.

### B. STEP TWO

At step two, the ALJ found Plaintiff "ha[d] the following severe impairments: rheumatoid arthritis, bilateral hand psoriatic arthritis, diabetes mellitus, hypertension, lumbar spine strain, dyslipidemia, and psoriasis." Id.

### C. STEP THREE

At step three, the ALJ found Plaintiff does "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id.

### D. RFC DETERMINATION

The ALJ found Plaintiff had the following RFC:

> "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift, carry, push, or pull 20 pounds occasionally and 10 pounds frequently; stand and walk for about 6 hours out of 8; sit for about 6 hours out of 8; postural activities such as climbing, balancing, stopping, kneeling, crouching, and crawling can be performed on an occasional basis; no ladders, ropes, or scaffolds; and frequent bilateral handling and fingering."

Id. at 16.

///

### E. STEP FOUR

At step four, the ALJ found Plaintiff is "unable to perform any past relevant work." Id. at 18.

### F. STEP FIVE

At step five, the ALJ found "[c]onsidering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Id.

## V.
## PLAINTIFF'S CLAIMS

Plaintiff presents two disputed issues: (1) whether the ALJ failed to properly consider the criteria of listing 8.05[2]; and (2) whether the ALJ failed to properly consider Plaintiff's testimony in making his credibility determination. JS at 2-3.

The Court finds the first issue dispositive of this matter and thus declines to address the remaining issue. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's] alternative ground for remand.").

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th

---

[2] An impairment under Listing 8.05 is defined as: Dermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Cir. 2007). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720 (citation omitted); see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (stating that a reviewing court "may not affirm simply by isolating a 'specific quantum of supporting evidence'") (citation omitted). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

The Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.
## DISCUSSION
**THE ALJ FAILED TO SUFFICIENTLY DEVELOP THE RECORD BEFORE CONCLUDING PLAINTIFF DID NOT MEET THE REQUIREMENTS OF LISTING 8.05**

A.  **RELEVANT FACTS**

   1. **Plaintiff's Medical History**

In July 2013, Plaintiff's treating physician, Dr. Oscar Cama, noted Plaintiff has a history of psoriasis that affects her entire body, but is mostly concentrated in

her arms, hands, and chest. AR at 264. In addition to psoriasis affecting Plaintiff's skin, Dr. Cama also found Plaintiff suffers from psoriatic arthritis causing joint pain and inflammation in her hands. Id. at 264-65. In August 2013, Dr. Cama placed Plaintiff on temporary disability due to her psoriatic arthritis. Id. at 266.

In November 2013, Dr. Cama noted "active flare ups" of psoriatic lesions on both of Plaintiff's arms. Id. at 287. Around that same time, Plaintiff also received an orthopedic consultation from Dr. Vicente R. Bernabe, a board certified orthopedic surgeon. Id. at 276-81. Dr. Bernabe diagnosed Plaintiff as suffering from "psoriatic arthritis bilateral hands" and "lumbar musculoligamentous strain." Id. at 280. Dr. Bernabe noted Plaintiff complained of "bilateral hand pain which started three years ago"; suffers from "a long history of psoriasis" which has been treated with pain medication; and has been diagnosed with psoriatic arthritis, which causes "sharp, throbbing pain exacerbated by prolonged lifting, bending, and standing." Id. at 277. Dr. Bernabe additionally noted Plaintiff takes Meloxicam for the pain caused by her psoriasis. Id. After examining Plaintiff, Dr. Bernabe found Plaintiff has "psoriasis on the dorsum of her forearms," "flexion contracture deformity and hypertrophy of the distal and proximal interphalangeal joints of the bilateral hands," and "slight ulnar deviation of the metacarpophalangeal joint." Id. at 279. While Plaintiff "is able to make a complete fist" and has "intact finger opposition and intact intrinsic function," her grip strength is "decreased bilaterally" and "[s]he is tender to palpation along the small joints of the hands." Id.

In January 2014, imaging of Plaintiff's left hand revealed "a boutonniere deformity in the third finger," "fifth distal interphalangeal joint space narrowing which appears symmetric to the right hand and likely represents a congenital anomaly," and "mildly osteopenic" bones. Id. at 297. Imaging of Plaintiff's right hand revealed "radiocarpal joint space narrowing," "[p]eriarticular osteopenia," and "suggestion of widening of the scapholunate interval." Id. at 298. Dr. Edwin

7

Krick, a rheumatologist, noted Plaintiff had been suffering from psoriasis for many years and that Plaintiff had undergone arthritic changes in the last four years. Id. Dr. Krick noted Plaintiff had multiple "plaques visible on hands [and her] chest." Id. at 299. He later prescribed Methotrexate to address the psoriasis. Id.

In April 2014, Plaintiff was seen by another rheumatologist, Dr. Mike Nguyen, who noted Plaintiff's itching and joint pain caused by the psoriatic arthritis had improved with treatment by Methotrexate. Id. at 296.

In February 2015, despite continued treatment with Methotrexate, Dr. Cama noted Plaintiff was referred to dermatologist, Dr. Leon Schwartz, because her psoriasis "need[ed] [a] dermatology evaluation." Id. at 312. One month later, Dr. Cama noted Plaintiff was awaiting a dermatology follow up. Id. at 309.

**2. The ALJ's Opinion**

The ALJ found Plaintiff's psoriasis does not meet the severity requirement of Listing 8.05. AR at 16. In coming to this conclusion, the ALJ noted "[t]reatment records indicate [Plaintiff's] skin lesions [are] mostly on the upper extremities and mostly affecting the hands." Id. Additionally, the ALJ found "[p]hysical examinations reveal no suspicious lesions, warm and dry," and "[t]here is generally no edema in the extremities." Id. The ALJ noted "[i]n August 2013, [Plaintiff] was placed on disability for a few months and prescribed over-the-counter pain medication." Id. The ALJ further noted that, although Plaintiff continued to have flare-ups, "a rheumatologist started her on methotrexate, which improved her symptoms." Id. The ALJ relied on a report from an orthopedic consultative examiner "who found psoriasis on the dorsum of [Plaintiff's] forearms, [Plaintiff] was tender to palpation along the small joints of the hands, and [Plaintiff] had decreased grip strength bilaterally, but she was able [to] make a complete fist, had intact finger opposition and intact intrinsic function, and had normal neurologic function." Id. The ALJ noted "[t]he examiner assessed frequent manipulation with the bilateral extremities." Id. In addition to

the medical evidence reviewed, the ALJ observed Plaintiff was "awaiting referral to a dermatologist." Id. Based on the record, the ALJ concluded "the evidence shows [Plaintiff] is not very seriously limited in her ability [to] do [] fine and gross motor movements as required by the listings." Id.

**B.    APPLICABLE LAW**

An individual may be considered disabled under Listing 8.05 if she suffers from psoriasis that causes "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § 404, Listing 8.05 of Subpart P, Appendix 1. "Extensive skin lesions" are those involving "multiple body sites or critical body areas, and result in a serious limitation." 20 C.F.R. § 404, Listing 8.00(C)(1) of Subpart P, Appendix 1. Extensive skin lesions that result in a "serious limitation" can include "lesions that interfere with the motion of joints or use of extremities," lesions on the palms of both hands that seriously limit one's ability to "perform fine and gross motor movements," or "lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit" one's ability to ambulate. Id.

Alternatively, an individual who has skin lesions but with periods in which his condition falls into remission may still suffer from a condition that is medically equal to Listing 8.05 provided the individual suffers from "frequent flareups" of the condition. 20 C.F.R. § 404, Listing 8.00(C)(2) of Subpart P, Appendix 1. Thus, an ALJ should consider "how frequent and serious [a plaintiff's] flareups are, how quickly they resolve, and how [a plaintiff] function[s] between flareups" to evaluate whether the plaintiff has a severe impairment under Listing 8.05. Id. In making this determination, an ALJ may also consider the treatment an individual receives for his dermatitis, including the "effects of medication, therapy, surgery, and any other form of treatment [a plaintiff] receive[s]." 20 C.F.R. § 404, Listing 8.00(C)(4) of Subpart P, Appendix 1.

When evaluating these factors and making a disability determination, the ALJ has a "special duty to fully and fairly develop the record and to assure that the [plaintiff's] interests are considered." Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quotation marks omitted)). Moreover, "[a] specific finding of ambiguity or inadequacy of the record is not necessary to trigger this duty to inquire, where the record establishes ambiguity or inadequacy." McLeod v. Astrue, 640 F.3d 881, 885 (9th Cir. 2010). "When the ALJ's duty is triggered by inadequate or ambiguous medical evidence, the ALJ has an obligation to obtain additional medical reports or records from the claimant's treating physicians." Held v. Colvin, 82 F. Supp. 3d 1033, 1040 (N.D. Cal. 2015).

## C. ANALYSIS

Plaintiff's treatment records from February 2015 specifically indicate Plaintiff was referred to a dermatologist because her psoriasis "need[ed] [a] dermatology evaluation." AR at 312. Plaintiff's treatment records from March 2015 noted Plaintiff was still awaiting the dermatological follow up. Id. at 309. The record, however, does not contain any treatment notes from a dermatologist, nor does it include any treatment records following the February and March 2015 records that reference the dermatologist referral.

This Court finds the ALJ failed to sufficiently develop the record before determining Plaintiff's psoriasis and psoriatic arthritis did not meet Listing 8.05 because he did not seek medical records from, or inquire into, the dermatological referral referenced in the February and March 2015 treatment records. See id. at 312. While the record reveals Plaintiff appeared to be responding well to Methotrexate, the record also indicates Plaintiff suffers from a long history of

psoriasis, which includes a "flareup" of the condition in the past. See id. at 287. The ALJ was well-aware of Plaintiff's history of psoriasis and specifically acknowledged in his opinion Plaintiff was "awaiting referral to a dermatologist" due to her psoriasis. Id. at 16. Nevertheless, the ALJ failed to conduct any inquiry into the dermatological referral or to obtain any medical records related to the referral. Hence, the ALJ came to his conclusion Plaintiff's psoriasis did not meet Listing 8.05 without determining whether (1) the dermatological referral itself was the result of a flareup of her condition, (2) Plaintiff was in fact treated by a dermatologist, or (3) what diagnosis or treatment the dermatologist provided. This incomplete medical record combined with the fact the ALJ was well-aware Plaintiff had a history of psoriasis, including psoriasis flareups, triggered the ALJ's duty to further investigate. Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (holding the ALJ's duty to supplement plaintiff's medical record was triggered because the medical evidence was sufficiently ambiguous as a result of plaintiff's changing health conditions). Thus, the Court cannot find the ALJ properly considered all relevant and available evidence when concluding Plaintiff's psoriasis did not meet or medically equal Listing 8.05.

## VIII.
## RELIEF

**A.  APPLICABLE LAW**

"When an ALJ's denial of benefits is not supported by the record, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ

would be required to find the claimant disabled if all the evidence were properly evaluated." Id. (citations omitted); see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B. ANALYSIS**

In this case, the record has not been fully developed. The ALJ must reconsider Plaintiff's impairment under Listing 8.05 following an evaluation of Plaintiff's 2015 dermatological referral. While the Court does not make any determination as to whether Plaintiff will succeed in proving disability, the fact that the ALJ came to his conclusion without determining whether Plaintiff was suffering from a severe flareup of her psoriasis warrants consideration. Accordingly, remand for further proceedings is appropriate.

## IX.
## **CONCLUSION**

For the foregoing reasons, IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: June 05, 2017

HONORABLE KENLY KIYA KATO
United States Magistrate Judge